# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

_____ )
                                )
BRITTNEY KAUFMAN,               )
                                )
      Plaintiff,                )
                                )          **Civil Action No.**
      v.                        )          **25-11550-FDS**
                                )
JAMEY UPTON, CONNIE UPTON, and  )
DEWITT UPTON,                   )
                                )
      Defendants.               )
                                )
_____ )

## MEMORANDUM AND ORDER ON MOTIONS TO DISMISS

**SAYLOR, J.**

This is an action arising out of a Tennessee divorce proceeding and a related child-custody dispute.

Plaintiff Brittney Kaufman is a resident of Massachusetts. She has filed suit against her former husband, defendant Jamey Upton, and his parents, defendants Connie Upton and Dewitt Upton, all of whom are residents of Tennessee. The complaint asserts claims for intentional infliction of emotional distress against each defendant. Although the complaint does not specifically allege the basis for subject-matter jurisdiction, the civil cover sheet indicates it is diversity of citizenship under 28 U.S.C. § 1332.[1]

According to the complaint, Brittney and Jamey were married in November 2018; it appears that they were married in Tennessee, resided in Tennessee during their marriage (at least

---

[1] According to the complaint, plaintiff is a citizen of Massachusetts and all defendants are citizens of Tennessee. According to the civil cover sheet, the amount in controversy is $100,000.

prior to the time they separated), and were divorced in Tennessee. They had one child, who was born in March 2020 in Tennessee. The complaint alleges that Jamey engaged in abusive conduct, including physical and sexual assaults, in the course of the marriage, and that in October 2020 Brittney left with the child and moved to Massachusetts.

In January 2021, Brittney was awarded custody of the child, apparently by a Tennessee court. However, in the subsequent divorce decree, which was issued in October 2021, Jamey was awarded temporary custody of the child under the supervision of his parents. In 2021 and 2022 there were multiple court proceedings in Tennessee and Massachusetts centered on child custody and visitation issues. It appears that Brittney has had custody of the child in Massachusetts since August 2022.

The claims against Connie and Dewitt, Jamey's parents, are based on alleged improper conduct during the child-custody dispute, including making false statements, withholding information, and disobeying court orders concerning child custody and visitation. The claims against Jamey are based both on his abusive conduct during the marriage and his actions in the course of the child-custody dispute.

All defendants have moved to dismiss on multiple grounds, including (1) lack of subject-matter jurisdiction; (2) lack of personal jurisdiction; (3) lack of jurisdiction under the *Rooker-Feldman* doctrine; (4) the litigation privilege; and (5) the statute of limitations.

### A.    The Allegations of the Complaint

The following allegations are taken from the complaint, except as otherwise noted.

Brittney Kaufman and Jamey Upton were married on November 14, 2018. (Compl. ¶ 1). They were married in Tennessee and resided in Tennessee as husband and wife until they separated in October 2020.

The complaint alleges that Jamey physically assaulted Brittney on multiple occasions in

July 2019 and March, April, and May 2020.  (*Id*. ¶ 5).  On February 22, 2020, Jamey "pointed a loaded 9-millimeter firearm at [Brittney] while she was eight months pregnant."  (*Id*. ¶ 7).

Jamey and Brittney had a child together, who was born on March 23, 2020, in Tennessee. (*Id.* ¶ 3).

For seven weeks after the child was born, Jamey forced Brittney and the child to sleep in the basement.  (*Id.* ¶ 15).

On May 9, 2020, the home of Brittney and Jamey was raided by law enforcement. (*Id.* ¶ 8).  Jamey, who had two prior convictions for federal drug offenses and aggravated assault, was charged with various felonies, possession of methamphetamine and heroin for resale, possession of fentanyl, and possession of a firearm during the commission of a felony.  (*Id*. ¶¶ 9-10).

On May 24, 2020, Jamey allegedly sexually assaulted Brittney.  (*Id*. ¶ 11).

On two separate but undated occasions, Jamey allegedly killed a dog.  (*Id.* ¶ 12).

On June 10, 2020, Jamey threatened Brittney in the presence of the child.  (*Id*. ¶ 13).

At some unidentified point, Brittney obtained a restraining order against Jamey in Knox County, Tennessee.  On June 20, 2020, he stalked Brittney in violation of that order.  (*Id.* ¶ 14).

On October 20, 2020, Brittney left Tennessee and took the child with her to Massachusetts to the home of her sister.  (*Id.* ¶ 16).  It appears that up to that point, all of the alleged events occurred in Tennessee.

On November 30, 2020, Brittney applied for a restraining order against Jamey in the Framingham District Court in Massachusetts.  (*Id.* ¶ 17).

Although the relevant dates are not set forth in the complaint, Jamey allegedly committed various acts of abusive conduct directed to Brittney, such as selling her car without her consent.

(*Id.* ¶¶ 18-21).   Brittney applied for restraining orders against Jamey in Tennessee and Massachusetts, and her sister obtained a restraining order against him, apparently in Massachusetts.  (*Id.* ¶¶ 20, 22).

At some point, divorce proceedings were initiated in Tennessee.  (*See id.* ¶ 26).

On January 25, 2021, Brittney was awarded physical custody of the child by a Tennessee court.  (*Id.* ¶ 23).

On October 7, 2021, a divorce decree was issued in Tennessee.  (*Id.* ¶¶ 2, 24).

The recitation of events in the complaint from that point forward is incomplete and somewhat incoherent.  The complaint alleges that in the Tennessee divorce decree of October 7, 2021, Jamey was awarded temporary custody of the child under the supervision of Jamey's parents.  (*Id.* ¶ 24).  It also alleges, without explanation, that "[p]ursuant to the Divorce Order," Brittney "was found guilty of 11 counts of willful and criminal contempt."  (*Id.* ¶ 25).   It alleges that Jamey's parents, in the court in Tennessee, "improperly attempted to file for custody of the minor child and sought financial relief against [Brittney], which the Court deemed improper." (*Id.* ¶ 26).  And it alleges that Brittney "was unaware of the whereabouts or custodianship of the [child]." (*Id.* ¶ 27).

The complaint goes on to allege that on November 23, 2021, Jamey "filed documents in the Middlesex [Massachusetts] Probate and Family Court in an attempt to obtain custody" from Brittney, and that those documents "contained falsehoods."  (*Id.* ¶ 28).   On February 11, 2022, the Massachusetts court entered an order granting temporary care and custody of the child to Jamey's parents.  (*Id.* ¶ 29).

On February 14, 2022, Brittney "appeared at a hearing, where she was arrested and jailed due to alleged 11 counts of willful and criminal contempt."  (*Id.* ¶ 30).  The complaint does not

indicate whether that hearing occurred in Massachusetts or Tennessee.

According to the complaint, all three defendants "intentionally withheld the minor child from [Brittney] for over 63 days, refusing to communicate or disclose the child's location." (*Id.* ¶ 31). "A hearing was scheduled on March 18, 2022, in Monroe County, Tennessee," at which "the Court ordered [Brittney] six hours of supervised visitation with [the child]." (*Id.* ¶ 32).

The complaint then alleges that "[Connie and Dewitt] consistently created scheduling conflicts, refusing to accommodate [Brittney's] availability despite her adjustments to her work schedule." (*Id.* ¶ 33). "On March 30, 2022, [Brittney] provided birthday gifts for [the child] during a supervised visit," but Jamey "returned the gifts to the supervisor to be returned to [Brittney]." (*Id.* ¶ 34). "[The child] was dropped off every time for supervised visits without essential items such as diapers, wipes, drinks, food, extra clothing, or toys." (*Id.* ¶ 35). Connie and Dewitt "failed to respond to approximately 73 text messages from [Brittney] regarding [the child's] welfare over the course of a 63-day period." (*Id.* ¶ 36). Connie and Dewitt also "unlawfully withheld [the child's] medical records, obstructing [Brittney's] ability to make informed decisions regarding the child's health and welfare." (*Id.* ¶ 37). The complaint alleges that Brittney observed bruises and marks on the child during the supervised visits, although it does not allege who was responsible. (*Id.* ¶ 39).

The child was returned to Brittney's custody on August 29, 2022. (*Id.* ¶ 40). The complaint does not indicate which court issued that order, but presumably it was a court in Tennessee. According to the complaint, the child experienced nightmares for at least four months. (*Id.*).

The complaint does not include a prayer for relief, but apparently seeks compensatory damages for the emotional distress Brittney has suffered at defendants' hands, as well as

compensation for the expenses incurred in connection with litigating the child-custody dispute. (*Id.* ¶¶ 44, 54, 69, 79).

### B.    Discussion

For the reasons set forth below, all of the claims will be dismissed for jurisdictional and other reasons.  The claims against Connie and Dewitt, which arise directly out of the child-custody and visitation dispute, are barred by the domestic-relations exception to federal-court jurisdiction.  To the extent that the claims against Jamey arise out of that dispute, they are barred for the same reason.  To the extent that the claims against Jamey arise out of acts of abuse occurring outside of the divorce proceeding, they are time-barred.  Furthermore, and in any event, this Court does not have personal jurisdiction over Connie and Dewitt, and most, if not all, of the claims involving misconduct in court proceedings are barred by the litigation privilege.

### 1.    Subject-Matter Jurisdiction

As a general matter, under the domestic-relations exception to federal jurisdiction, federal courts do not have authority to hear cases involving family-law issues that fall within the traditional authority of the states.  *See Barber v. Barber*, 62 U.S. 582, 584 (1858) ("We disclaim altogether any jurisdiction in the courts of the United States upon the subject of divorce, or for the allowance of alimony . . . ."); *In re Burrus*, 136 U.S. 586, 593-94 (1890) ("The whole subject of the domestic relations of husband and wife, parent and child, belongs to the laws of the States and not to the laws of the United States.").  The exception, however, is "narrowly limited." *Dunn v. Cometa*, 238 F.3d 38, 41 (1st Cir. 2001).  "In general, lawsuits affecting domestic relations, however substantially, are not within the exception unless the claim at issue is one to obtain, alter or end a divorce, alimony or child custody decree."  *Id.* (citing *Ankenbrandt v. Richards*, 504 U.S. 689, 704 (1992)).  Accordingly, tort claims can fall outside of the domestic-relations exception even "despite their intimate connection to family affairs."  *Id.*  To determine

6

whether such a claim is barred by the domestic-relations exception, a court must "look to the reality of what is going on"—that is, it must determine whether the complaint is, in effect, a challenge to a divorce, alimony, or child custody decree, or whether it is truly an independent tort claim. *See Irish v. Irish*, 842 F.3d 736, 742 (1st Cir. 2016); *see also Chevalier v. Estate of Barnhart*, 803 F.3d 789, 795-96 (6th Cir. 2015) (reinforcing the "uncontroversial proposition that a plaintiff may not artfully cast a suit seeking to modify or interpret the terms of a divorce, alimony, or child-custody decree as a state-law . . . tort claim in order to access the federal courts").

Plaintiff's claims against Connie and Dewitt fall entirely within the domestic-relations exception. Those claims arise out of their conduct in the child-custody proceedings and their subsequent visitations with the child. It is true that the complaint does not specifically allege whether their actions—such as not responding to communications from plaintiff concerning the child—actually violated the terms of the child-custody decree or any other court order. Regardless, the "reality" of the situation is that the parties were engaged in a bitter dispute concerning custodial and visitation rights with regard to the child, and that all of the alleged actions of the parents were undertaken in the course of, and in connection with, that dispute. The adjudication of disputes concerning child custody and visitation rights are matters for the state court in Tennessee (and, possibly, Massachusetts), not a federal court. Accordingly, those claims fit comfortably within the domestic-relations exception.[2]

---

[2] Alternatively, and at a minimum, this Court should abstain from exercising jurisdiction pursuant to *Younger v. Harris*, 401 U.S. 37 (1971), and its progeny. *See Malachowski v. City of Keene*, 787 F.2d 704, 708 (1st Cir. 1986) ("The Supreme Court has expanded the applicability of *Younger* to many categories of civil proceedings, including a state child custody action."); *see also Little v. Massachusetts Dep't of Children & Families*, 2025 WL 3028716, at *3 (D. Mass. Oct. 29, 2025).

A similar analysis applies to that portion of the claim against Jamey that arises directly out of the child-custody and visitation dispute—that is, any such claim is barred by the domestic-relations exception. The remainder of the claim against Jamey, however, is not. The allegations against him that do not arise out of the child-custody and visitation dispute include the contentions that he stalked plaintiff on several occasions; that he physically and sexually assaulted her; and that he repeatedly threatened her. (Compl. ¶¶ 11-14). Although those actions were in the context of a domestic relationship between plaintiff and Jamey, that alone does not mean they are barred. *See Irish*, 842 F.3d at 741 (noting that the "[domestic-relations] exception's circumscribed reach extends 'not to the *subject* of domestic relations, but to particular familial status-related *functions* that fall within state power and competence.'" (quoting 13E WRIGHT & MILLER'S FEDERAL PRACTICE & PROCEDURE § 3609.1 (3d ed.) (emphasis in original) (citation modified)). Instead, because these allegations do not relate to "obtain[ing], alter[ing], or end[ing] a divorce, alimony[,] or child custody decree," or alleged violations of such a decree, they are not barred for lack of jurisdiction. *See Dunn*, 238 F.3d at 41.

In summary, all claims against Connie and Dewitt, and that portion of the claim against Jamey arising out of the child-custody and visitation dispute, are barred by the domestic-relations exception, and therefore outside of the subject-matter jurisdiction of this court. The remainder of the claim against Jamey is not barred by lack of jurisdiction—although, as discussed below, it fails for other reasons.

### 2.    **Personal Jurisdiction**

In addition, and in any event, this Court lacks personal jurisdiction over Connie and Dewitt. The exercise of personal jurisdiction over a defendant must be authorized by statute and accord with the due-process requirements of the U.S. Constitution. *See A Corp. v. All Am. Plumbing, Inc.*, 812 F.3d 54, 58 (1st Cir. 2016).

The Massachusetts long-arm statute, Mass. Gen. Laws ch. 223A, § 3, "'imposes specific constraints on the exercise of personal jurisdiction that are not coextensive with the parameters of due process' and thus . . . courts are to begin with 'a determination under the long-arm statute' before 'considering the constitutional question.'" *Mojtabai v. Mojtabai*, 4 F.4th 77, 85 (1st Cir. 2021) (quoting *SCVNGR, Inc. v. Punchh, Inc.*, 478 Mass. 324, 326 (2017)) (citation modified). Plaintiff appears to contend that § 3(d) of the statute, which allows the exercise of jurisdiction over a defendant who "cause[s] tortious injury in this commonwealth by an act or omission outside this commonwealth if he . . . engages in any . . . persistent course of conduct . . . in this commonwealth," applies here. Mass. Gen. Laws ch. 223A, § 3(d).

The Supreme Judicial Court most recently addressed the application of § 3(d) to somewhat similar facts in *Caplan v. Donovan*, 450 Mass. 463 (2008). In that case, a plaintiff fled from a marital home in Florida to Massachusetts with a child following alleged acts of domestic violence in Florida. *Id.* at 464. After the plaintiff had re-settled at her mother's house in Massachusetts, the defendant, apparently in an effort "to locate the plaintiff," made phone calls "five or six times each day" to various parties—the plaintiff, her father's house, and defendant's friends—all in Massachusetts. *Id.* Shortly thereafter, plaintiff obtained an order from a Massachusetts state court preventing defendant from contacting or abusing her, awarding custody of the couple's child to her, ordering defendant to surrender his firearm to authorities in Florida, and ordering him to compensate her in an amount to be determined. *Id.* at 464-465.

The Supreme Judicial Court determined that § 3(d) did not authorize the exercise of personal jurisdiction over the defendant because his telephone calls directed to Massachusetts "did not amount to a tortious injury in the Commonwealth sufficient to allow personal jurisdiction." *Id.* at 466. "The mere fact of making telephone calls, even five or six calls per

day, does not by itself create a tortious injury in the Commonwealth." *Id.* Although the plaintiff did not expressly allege that she had "continued to experience emotional distress or fear stemming from the abusive incident in Florida," even if she had, that "would not provide the 'tortious injury in this Commonwealth' required by § 3(d)." *Id.* (citation modified). Rather, "[a]ny continued fears or emotional distress that the plaintiff experienced in Massachusetts would qualify as '[m]anifestations, effects, and consequences' of the injury she suffered in Florida and then transported to Massachusetts, not injuries created in the Commonwealth." *Id.* at 467 (citing *Cunningham v. Ardrox, Inc.*, 40 Mass. App. Ct. 279, 282 (Mass. App. Ct. 1996)).

Thus, § 3(d), as interpreted in *Caplan*, does not allow the exercise of personal jurisdiction over Connie and Dewitt because the complaint fails to allege that they caused plaintiff to suffer a tortious injury in the Commonwealth. If a defendant making multiple calls per day to parties in Massachusetts "does not by itself create a tortious injury in the Commonwealth," then merely ignoring messages from someone located in Massachusetts cannot cause such an injury either. *See Caplan*, 450 Mass. at 466. To the extent that their failure to respond to plaintiff's messages caused her any "continued fears or emotional distress," those injuries are manifestations of the injuries she suffered in Tennessee "and then transported to Massachusetts, not injuries created in the Commonwealth." *See id.* at 467.

For that reason, the Massachusetts long-arm statute does not permit the exercise of personal jurisdiction over Connie and Dewitt. The Court need not analyze whether the exercise of personal jurisdiction would also be barred by the Due Process Clause of the Fourteenth Amendment. *See Nieves-Marquez v. Puerto Rico*, 353 F.3d 108, 123 (1st Cir. 2003) (noting that "courts should avoid deciding constitutional issues if non-constitutional grounds are available").

### 3.    **Litigation Privilege**

In addition, to the extent that any of the claims arise out of defendants' litigation conduct, they are barred by the litigation privilege.  The litigation privilege "precludes civil liability based on communications made by a party, witness[,] or attorney in connection with judicial proceedings or contemplated litigation," and extends to "actions" taken "during the course of a judicial proceeding" as well as communications. *Bassichis v. Flores*, 490 Mass. 143, 158 (2022).

For example, the complaint alleges that Jamey intentionally inflicted emotional distress on plaintiff in part by "filing false pleadings" in the child-custody dispute.  (Compl. ¶¶ 28, 51). The litigation privilege, however, bars claims for intentional infliction of emotional distress where the underlying conduct or statements were made "in connection with judicial proceedings or contemplated litigation." *See Frazier v. Bailey*, 957 F.2d 920, 932 (1st Cir. 1992) (recognizing that litigation privilege extends to, among others, claims for "intentional infliction of emotional distress").  Therefore, the claims are barred to the extent that they are based on, or arise out of, statements and actions protected by the litigation privilege.

### 4.    **Statute of Limitations**

Finally, to the extent that the claim against Jamey is not subject to the domestic-relations exception, it is time-barred.  Under Massachusetts law, the general limitations period for tort claims is three years.  Mass. Gen. Laws, ch. 260 § 2A; *see Mellinger v. West Springfield*, 401 Mass. 188, 191 (1987) (applying § 2A to IIED claim).  Under Tennessee law, the limitations period for personal injury torts is one year.  Tenn. Code Ann. § 28-3-104; *see Leach v. Taylor*, 124 S.W.3d 87, 91 (Tenn. 2004) (applying § 28-3-104 to IIED claim).

The complaint was filed on May 29, 2025.[3]  Even assuming, without deciding, that the

---

[3] Although the complaint itself is dated May 5, 2025, it was not filed with the Court until May 29, 2025.

longer three-year limitations period applies, the complaint includes essentially no allegations of conduct by Jamey on or after May 29, 2022, that do not directly arise out of the child-custody and violation dispute.[4]  Indeed, the only allegation of any kind against Jamey that falls within that time frame is the allegation that Jamey, along with his parents, "withheld the minor child from [plaintiff] for over 63 days, refusing to communicate or disclose the child's location." (Compl. ¶ 31).[5]  But that aspect of the claim clearly falls within the domestic-relations exception, and therefore may not be asserted in this court.[6]

### 5.  Conclusion

In summary, the court lacks subject-matter jurisdiction over all claims against Connie and Dewitt Upton, and a portion of the claim against Jamey Upton, under the domestic-relations exception; the court lacks personal jurisdiction over Connie and Dewitt Upton; certain claims are barred by the litigation privilege; and any claim against Jamey that is potentially within the court's jurisdiction is time-barred.  Because plaintiff's claims fail for other reasons, the Court does not reach the argument that the claims are barred by the *Rooker-Feldman* doctrine.

Accordingly, and for the foregoing reasons, the motions of defendants Jamey Upton, Connie Upton, and Dewitt Upton to dismiss for lack of subject-matter jurisdiction, lack of

---

That date, therefore, is the appropriate one from which to determine whether the limitations period has expired.

[4] All of the allegations of physical, sexual, and other forms of abuse that predate October 2020 concern events that occurred in Tennessee, not Massachusetts.

[5] The complaint is not clear about when this 63-day period began.  If it began on February 14, 2022—the date the complaint alleges that plaintiff "was arrested and jailed due to alleged 11 counts [sic] of willful and criminal contempt"—then it falls entirely outside the limitations period.  (*Id.* ¶ 30).  If it began on March 30, 2022, when the complaint alleges that plaintiff participated in a supervised visit with the child, then it would have run through June 1, 2022, meaning that only 4 of the 63 days would fall within the limitations period.  (*Id.* ¶ 34).

[6] In addition, the cases plaintiff cites for the proposition that "the statute [of limitations for IIED] does not begin to run until the last event in the series of wrongful acts" are either nonexistent or inapposite, as noted in this Court's earlier order.  (Dkt. No. 25).  And defendants, by contrast, do provide an actual authority to support their argument that "tolling of actions in Massachusetts under the continuing tort doctrine is limited to claims of nuisance and trespass."  *Vander Salm v. Bailin & Assocs., Inc.*, 2014 WL 1117017, at *6 (D. Mass. Mar. 18, 2014).

personal jurisdiction, and failure to state a claim upon which relief can be granted, are

GRANTED.

**So Ordered.**

/s/ F. Dennis Saylor IV
F. Dennis Saylor IV
Dated: January 21, 2026                United States District Judge